HAGGAR APPAREL CO.,
Plaintiff–Appellee,

v.

The UNITED STATES, Defendant–
Appellant.

No. 97–1002.

United States Court of Appeals,
Federal Circuit.

Oct. 22, 1997.

Ronald W. Gerdes, Sandler, Travis & Rosenberg, P.A., Washington, DC, argued for plaintiff-appellee. With him on brief were Edward M. Joffe, Gilbert Lee Sandler, and Gerson M. Joseph, Miami, FL.

Saul Davis, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, International Trade Litigation, New York City, argued for defendant-appellant. With him on brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, of Washington, DC, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office, New York City. Of counsel on brief was Chi S. Choy, Office of Assistant Chief Counsel, United States Customs Sevice, New York City.

Before RICH, NEWMAN, AND CLEVENGER, Circuit Judges.

RICH, Circuit Judge

This appeal in a so-called "American-goods-returned" case is from the decision by the United States Court of International Trade of 25 July 1996 in case number 93–06–00343 ordering the United States to grant a duty allowance for the goods in question. We affirm.

## BACKGROUND

The merchandise at issue in this case consists of men's and women's permanent-press, wrinkle-free trousers that are assembled in Mexico from resin-impregnated fabric components made in the U.S. Plaintiff-appellee, Haggar Apparel Co. ("Haggar"), sells a line of such garments under the mark PRESSTIGE. There are three types of fabric used to make the PRESSTIGE garments: pre-cured fabrics in which the impregnating resin is cured before assembly into garments; synthetic fabrics which require pressing, but not curing; and post-cured fabrics that require curing after assembly into garments. While only those garments made with the third type of fabric—the post-cured fabric—are at issue in this case, all of the Haggar PRESSTIGE products are assembled, tagged, and packaged in Mexico for distribution in the U.S. Indeed, except for the brief detour required to cure the post-cured fabric, all of the PRESSTIGE products are processed in the same plants and undergo the same assembly, tagging, and other processing steps.

## OPINION

■ The issue in this case is whether the oven-baking process used to cure Haggar's post-cure fabric is an operation that is "incidental to assembly" under the tariff laws. The issue arises because the tariff provisions provide a partial duty allowance for certain U.S.-made components that are assembled outside the U.S. for return to the U.S. so long as the components are not advanced in value or improved in condition "except [by the actual assembly itself or] by operations [which are] incidental to the assembly process." Item 807.00, Tariff Schedules of the United States (1988) (for pre–1989 entries) and subheading 9802.00.80, Harmonized Tariff Schedule of the United States (1989).

■ The Court of International Trade, in a thorough opinion by Chief Judge DiCarlo, correctly applied the test set forth in the decision of this court's predecessor court in *United States v. Mast Indus., Inc.*, 69 C.C.P.A. 47, 668 F.2d 501 (C.C.P.A.1981), to determine whether ovenbaking is an operation that is incidental to assembly. In so doing, the court began its analysis by properly rejecting as overly restrictive the United States' argument that the term "assembly" means the joinder of two components. Instead, the court properly concluded that certain minor operations are not merely incidental to assembly, but are so integral to the process as to merge with it. The court then diligently applied the factors applied by this court's predecessor in *Mast*, to analyze the

curing operation at issue in this case. After balancing the relevant *Mast* factors, the court correctly concluded that the curing operation is "incidental to the assembly process" within the meaning of the statute.

■ The court next properly rejected the United States' argument that although "incidental to assembly," the curing process may nonetheless fall outside of the statute's tariff shelter if the process caused a prohibited advancement in value. The court looked to the express language of the statute and correctly concluded that the statute does not prohibit advancement in value where the operation in question is incidental to the assembly process.

■■ Finally, the court properly rejected the United States' argument that Customs' regulations interpreting and applying this statute are entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). As we have recently held in several cases, the United States' argument is without merit. *See Rollerblade, Inc. v. United States*, 112 F.3d 481, 483 (Fed.Cir.1997) (no *Chevron* deference applies to classification decisions); *Universal Elecs. Inc. v. United States*, 112 F.3d 488, 491–93 (Fed.Cir.1997) ("neither this court nor the Court of International Trade defers to Custom's interpretation of a tariff heading on the basis of special deference pursuant to [*Chevron*]"). Acknowledging the procedural importance of presumptions, the Court of International Trade is nonetheless charged with the duty to "reach the correct decision." *Rollerblade*, 112 F.3d at 484 (quoting 28 U.S.C. § 2643(b)). On appeal, we review the findings of that court— not those of Customs—for clear error; while we decide questions of law *de novo*. *Universal Elecs.*, 112 F.3d at 491.

### CONCLUSION

The decision of the Court of International Trade was correct for the reasons stated in its opinion. Therefore, we affirm.

*AFFIRMED.*