**HAGGAR APPAREL CO.,**
**Plaintiff–Appellee,**

**v.**

**The UNITED STATES, Defendant–**
**Appellant.**

**No. 97–1002.**

United States Court of Appeals,
Federal Circuit.

July 27, 2000.

Rehearing and Rehearing En Banc
Denied Oct. 19, 2000.

Ronald W. Gerdes, Sandler, Travis & Rosenberg, P.A., of Washington, DC, argued for plaintiff-appellee. With him on the brief were David E. Cohen; and Gilbert Lee Sandler, Edward M. Joffe, and Gerson M. Joseph, of Miami, Florida.

Bruce G. Forrest, Attorney, Civil Division, Appellate Staff, Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were David W. Ogden, Acting Assistant Attorney General; and William Kanter, Deputy Director, Appellate Staff. Also on the brief were Joseph I. Liebman, Attorney in Charge; and Saul Davis, Senior Trial Attorney, International Trade Field Office. Of counsel on the brief was Chi S. Choy, Attorney, Office of Assistant Chief Counsel, United States Customs Service, of New York, New York.

Sandra Liss Friedman, Barnes, Richardson & Colburn, of New York, New York, for amicus curiae Customs and International Trade Bar Association.

Before NEWMAN, MICHEL, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Upon remand from the United States Supreme Court, *see United States v. Haggar Apparel Co.*, 526 U.S. 380, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999), defendant United States seeks reversal of the United States Court of International Trade's determination that plaintiff Haggar Apparel Co.'s imported articles qualified for the partial exemption from import duties specified in Subheading 9802.00.80 of the Harmonized Tariff Schedule of the United States, codified at 19 U.S.C. § 1202 (1994). *See Haggar Apparel Co. v. United States*, 938 F.Supp. 868, 874–75 (1996). Because the imported goods are disqualified from the partial exemption by application of 19 C.F.R. § 10.16(c), which we hold to be a reasonable interpretation of the governing statute, we reverse the judgment of the Court of International Trade and remand with instructions to enter judgment in favor of the United States.

I

Haggar Apparel Co. ("Haggar") designs, manufactures, and markets apparel for men. This dispute arises from a refund proceeding for duties imposed by the United States Customs Service ("Customs") on men's pants shipped by Haggar to the United States from an assembly plant in Mexico. The fabric used to make the pants had been cut to shape in the United States and then shipped to Mexico, along with the thread, buttons, and zippers necessary to assemble the garments. The pants were assembled in Mexico, and later shipped back to the United States.

While in Mexico, however, the pants were "permapressed" at the Mexican plant. Permapressing, the parties agree, is a process designed to maintain a garment's crease and to avoid other creases or wrinkles from appearing through use. While there are various ways that permapressing may be accomplished, the pants in question were constructed of fabric that had been treated in the United States with a chemical resin. After assembly, the pants were baked in an oven at a facility in Mexico just prior to being shipped back to the United States; the baking activated the chemical resin and imparted the permapress qualities to the garments.

Upon import to the United States, Customs determined that the permapressing operation took the pants outside of the classification of Subheading 9802.00.80 of the Harmonized Tariff Schedule of the United States ("HTSUS"), which provides

a partial exemption from otherwise-applicable duties. In relevant part, Subheading 9802.00.80, 19 U.S.C. § 1202, is limited to:

> Articles ... assembled abroad in whole or in part of fabricated components, the product of the United States, which ... (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating and painting.[1]

Customs has promulgated a regulation, 19 C.F.R. § 10.16(c) (1998), interpreting the "operations incidental to assembly process" statutory language used in the HTSUS:

> (c) *Operations not incidental to the assembly process.* Any significant process, operation, or treatment other than assembly whose primary purpose is the fabrication, completion, physical or chemical improvement of a component, or which is not related to the assembly process, whether or not it effects a substantial transformation of the article, shall not be regarded as incidental to the assembly and shall preclude the application of the exemption to such article. The following are examples of operations not considered incidental to the assembly as provided under subheading 9802.00.80, Harmonized Tariff Schedule of the United States (19 U.S.C. 1202):
>
> . . .
>
> (4) Chemical treatment of components or assembled articles to impart new characteristics, such as shower-proofing, permapressing, sanforizing, dying or bleaching of textiles. . . .

The regulation was adopted in 1975 by the Commissioner of Customs, after notice-and-comment rulemaking. *See* 39 Fed. Reg. 24651 (1974) (proposed regulation); 40 Fed.Reg. 43021 (1975) (final regulation).

Pursuant to section 10.16(c)(4), which specifically lists "permapressing" as an example of operations which fail to meet the requirements of HTSUS 9802.00.80, Customs denied the exception to duty. Haggar challenged the denial of its protest against such classification by filing this suit in the Court of International Trade. *See* 19 U.S.C. § 1515 (1994) (establishing protest and review procedures for Customs classification decisions).

The Court of International Trade concluded, pursuant to the multi-factor test established by this court's predecessor in *United States v. Mast Industries, Inc.,* 69 C.C.P.A. 47, 668 F.2d 501 (1981), that the permapressing operation was incidental to the assembly process and thus did not disqualify the pants from favorable treatment under HTSUS 9802.00.80. *See Haggar Apparel Co. v. United States,* 938 F.Supp. 868, 875 (CIT 1996). The court rejected Customs' contention that 19 C.F.R. § 10.16(c) controlled, finding that the regulation "conflicts with the plain language" of the HTSUS, and noting that the Federal Circuit had, in a series of prior cases, *see e.g., General Motors Corp. v. United States,* 976 F.2d 716, 718 (Fed.Cir. 1992), either ignored or discounted the regulation. The court also rejected Customs' argument that the regulation was entitled to deference pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Haggar Apparel,* 938 F.Supp. at 875.

Customs appealed to this court, which declined to consider the regulation under the *Chevron* framework, and affirmed the Court of International Trade. *See Haggar*

---

[1] The HTSUS became law on January 1, 1989, replacing the provisions of the former Tariff Schedule of the United States ("TSUS"). *See* 19 U.S.C. § 3004. Item 807.00 of the TSUS, the previous statute which governs some of the shipments at issue in this case, is identical to HTSUS 9802.00.80.

*Apparel Co. v. United States,* 127 F.3d 1460, 1462 (Fed.Cir.1997). Customs then petitioned for a writ of certiorari to the Supreme Court, which was granted. *See United States v. Haggar Apparel Co.,* 524 U.S. 981, 119 S.Ct. 30, 141 L.Ed.2d 790 (1998). The Supreme Court vacated this court's judgment, holding that HTSUS 9802.00.80 is ambiguous, for purposes of *Chevron* analysis, thereby requiring courts to defer to Customs regulations manifesting a reasonable interpretation of the statute. *See United States v. Haggar Apparel Co.,* 526 U.S. 380, 391–92, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999). The Court, however, declined to consider whether 19 C.F.R. § 10.16(c) was a reasonable interpretation of the "operations incidental to the assembly process" provision of HTSUS 9802.00.80, reasoning that such arguments were better presented to this court in the first instance. *See* 526 U.S. at 395, 119 S.Ct. 1392. Accordingly, the case was remanded for further proceedings. *See id.*

Upon remand, we ordered additional briefing and oral argument, *see Haggar Apparel Co. v. United States,* 1999 WL 798028 (Fed.Cir. Aug.20, 1999), and now hold that 19 C.F.R. § 10.16(c) is a reasonable interpretation of HTSUS 9802.00.80 (and TSUS 807.00), and that Customs properly applied the regulation in this case.

## II

Regulations promulgated pursuant to rulemaking authority granted to administrative agencies are analyzed under the two-step procedure established in the Supreme Court's *Chevron* decision:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress....

[However,] [i]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842–43, 104 S.Ct. 2778. In this case, the Supreme Court has already answered the first question: HTSUS 9802.00.80 is ambiguous for *Chevron* purposes. *See* 526 U.S. at 394, 119 S.Ct. 1392. Thus, our task is to "decide, not whether the ... regulation represents the best interpretation of the statute, but whether it represents a reasonable one." *Atlantic Mut. Ins. Co., v. Commissioner,* 523 U.S. 382, 389, 118 S.Ct. 1413, 140 L.Ed.2d 542 (1998).

### A

■ In conducting the second half of the *Chevron* analysis, we "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. 2778 (*citing FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 39, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981); *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978); *Train v. Natural Resources Defense Council, Inc.,* 421 U.S. 60, 75, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Unemployment Compensation Comm'n v. Aragon,* 329 U.S. 143, 153, 67 S.Ct. 245, 91 L.Ed. 136 (1946); *McLaren v. Fleischer,* 256 U.S. 477, 480–81, 41 S.Ct. 577, 65 L.Ed. 1052 (1921)). Instead, our inquiry is confined to the question of whether the agency's interpretation of the statute is "inconsistent with [the] statutory mandate or ... frustrate[s] the congressional policy underlying a statute." *Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Relations*

*Auth.*, 464 U.S. 89, 97, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983). That is, we have refused to defer to an agency interpretation of a statute, as expressed in duly-promulgated regulations, only when such an interpretation was "contrary to the intent of congress, as divined from the statute and its legislative history." *Muwwakkil v. Office of Personnel Management*, 18 F.3d 921, 925 (Fed.Cir.1994) (refusing to grant deference to regulations contrary to statutory intent); *see United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961) ("[W]e should not disturb [the agency interpretation] unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned."); *Oshkosh Truck Corp. v. United States*, 123 F.3d 1477, 1481 (Fed.Cir.1997) (refusing to grant deference where agency regulation was at odds with the statutory language).

### B

■ Haggar presents two arguments as to why, in its view, 19 C.F.R. § 10.16(c) is not entitled to *Chevron* deference. First, it argues that the clear language of HTSUS 9802.00.80 excludes any interpretation of "operations incidental to the assembly process" that requires a comparison of the "effect" that a process has on the article. Second, Haggar suggests that Customs' regulatory position is merely one of convenience, conjured up for litigating purposes. We take these arguments in turn.

Haggar's statutory argument is that HTSUS 9802.00.80 requires what it calls a "comparative analysis of the operation itself to the assembly process." Appellee's Brief, at 26. The regulation, argues Haggar, replaces the proper analysis with one concerned with the relative effect of the operation on the article. *See id.* Customs responds by arguing that the regulation makes a choice in favor of a *qualitative*

analysis of the effect of the operation on the article, as opposed to a *quantitative* analysis of the significance of the operation in relation to the assembly process. Customs argues that the terms of the subheading support either a qualitative or quantitative line-drawing exercise, and that Customs, exercising legitimate agency policymaking discretion, has permissibly chosen the qualitative line. We agree.

There is little doubt that the statute permits the so-called "categorical" or "qualitative" analysis adopted by Customs. Indeed, far from excluding it, by listing exemplars, "cleaning, lubricating and painting," the statutory language appears to actually contemplate the imposition of a category-driven analysis. HTSUS 9802.00.80. The legislative history, by again listing categories and examples of the types of operations thought to be "incidental to the assembly process," fails to prohibit the approach adopted by Customs in section 10.16(c). H.R.Rep. No. 89–342, 89th Cong., 1st Sess. 49 (1965) (identifying "incidental" operations as "remov[ing] rust," "remov[ing] grease," and "add[ing] lubricants").

When Customs made the decision to adopt a categorical approach, it necessarily was required to make refined judgments about which kinds of operations fall on the side of "incidental to the assembly process," and which do not. For example, even with the statutory painting exemplar, Customs has decided that some kinds of painting are "incidental," and others are not, the distinction in the regulation being whether the paint operation is primarily for preservative or for decorative purposes. *Compare, e.g.,* 19 C.F.R. § 10.16(b)(3) (listing "[a]pplication of preservative paint or coating, including preservative metallic coating ..." as incidental to the assembly process) *with* 19 C.F.R. § 10.16(c)(3) (listing "[p]ainting primarily intended to enhance the appearance of an article or impart distinctive features or

characteristics" as *not* incidental to the assembly process). So, too, does the regulation distinguish varieties of pressing: some forms of pressing have been adjudged by Customs to be incidental to the assembly process, and others—such as permapressing—have been categorized by Customs to fall outside activity incidental to the assembly process. *Compare* 19 C.F.R. § 10.16(b)(7) (listing "[f]inal calibration, testing, marking, sorting, pressing, and folding of assembled articles" as incidental) *with* 19 C.F.R. § 10.16(c)(4) (listing "[c]hemical treatment ... such as ... permapressing" as *not* incidental).

We think that the kind of line-drawing Customs has exercised in its regulation is inevitable, and even necessary, once Customs embarks on a categorical approach to resolution of the statutory ambiguity. At the margins of any judgment call, reasonable minds may differ as to the judgment reached. Such is the natural consequence of regulatory line-drawing, much as the natural consequence of judicial line-drawing will permit of marginal dispute. But that is not to say that the line-drawing exercise lacks reason or is arbitrary. When *Chevron* applies to a fact situation, the regulator supplants the judge to decide in the first instance whether a fact circumstance falls within or without the law. The subsequent judicial inquiry under *Chevron* in this case is whether the agency has selected a "reasonable interpretation of the statutory phrase 'operations incidental to the assembly process.'" *Haggar Apparel*, 526 U.S. at 394, 119 S.Ct. 1392.

It may well be, as Haggar and the *amicus* argue, that a more generally quantitative approach—directly comparing the operation with the overall assembly process—is a better way to address the question posed by HTSUS 9802.00.80. In essence, Haggar argues that a test derived from the combination of quantitative and qualitative factors outlined in *United States v. Mast Industries*, 69 C.C.P.A. 47,

668 F.2d 501, 505 (1981), is "more faithful" to Congressional intent. But any analysis of what approach is "better" under the circumstances or (arguably) "more faithful" to Congressional intent would require this court to intrude upon the agency's mandate to reconcile conflicting policy goals in matters in which it has been delegated authority to implement the intent of Congress. *See Haggar Apparel*, 526 U.S. at 387, 119 S.Ct. 1392 (noting statutory delegation to the Secretary of the Treasury and to the Commissioner of Customs, respectively); *see also Chevron*, 467 U.S. at 844–45, 104 S.Ct. 2778 (citing *National Broadcasting Co. v. United States*, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943)); *National Labor Relations Board v. Seven–Up Bottling Co.*, 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953); *Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); *Republic Aviation Corp. v. National Labor Relations Bd.*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); *National Labor Relations Bd. v. Hearst Publications, Inc.*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). While this court may have chosen a different approach were we not required to defer to reasonable agency interpretations, *see Mast Indus.*, 668 F.2d at 505, or if the question had arisen in a solely judicial proceeding, *see Chevron*, 467 U.S. at 843 n. 11, 104 S.Ct. 2778, we cannot, consistent with well-settled principles of deference to agency interpretations of statutes they administer, hold that the regulations are contrary to congressional intent, as embodied in HTSUS 9802.00.80 and its legislative history. *Cf. Oshkosh Truck*, 123 F.3d at 1481; *Muwwakkil*, 18 F.3d at 925. Therefore, *Mast Industries*, an otherwise quite reasonable analytic tool, must yield to the language of Customs' regulation when imported articles reasonably fall within one of the regulatory categories expressed in 19 C.F.R. § 10.16(c).

Haggar also argues that Customs is adopting the position set forth in 19 C.F.R. § 10.16(c) solely for the purposes of litigation, thereby disqualifying the interpretation for deference under a *Chevron* analysis. *See, e.g., Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (declining to defer to "agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice"). We reject this contention. Prior to the Supreme Court's decision in *Haggar Apparel,* the law of this circuit was that "neither this court nor the Court of International Trade defers to Customs' interpretation of a tariff heading on the basis of special deference pursuant to [*Chevron* ]." *Universal Elecs. Inc. v. United States,* 112 F.3d 488, 491–93 (Fed.Cir.1997); *see also Rollerblade, Inc. v. United States,* 112 F.3d 481, 484 (Fed.Cir.1997) (holding that no *Chevron* deference applies to classification decisions). Under these conditions, and given that *Mast Industries* was the leading precedent on the question presented here, it is unsurprising that Customs would tailor its legal arguments to this court and to the Court of International Trade accordingly. This, however, does not mean that Customs' classification in this case, based upon the precise language in 19 C.F.R. § 10.16(c), is "wholly unsupported" by official agency actors. *Bowen,* 488 U.S. at 212, 109 S.Ct. 468 ("[W]e have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question."). Indeed, it would seem perverse for this court—after being overruled by the Supreme Court—to adopt the position that agency arguments seeking to implement the Court's guidance are insupportable because of this court's earlier adherence to an incorrect legal principle. Customs' interpretation of HTSUS 9802.00.80, as expressed in 19 C.F.R. § 10.16(c), is reasonable and is accordingly entitled to judicial deference.

## III

Our final question is whether Customs was correct in classifying the permapressing conducted on the pants in Mexico as an "operation not incidental to the assembly process." 19 C.F.R. § 10.16(c). The parties do not dispute the material facts concerning the imported articles. As noted above, the fabric was chemically treated in the United States, and then oven-baked after assembly in Mexico to impart the "permapressed" qualities. Accordingly, this analysis resolves to a question of whether Customs has properly applied its regulation to the articles at issue.

We have little trouble concluding that Customs properly applied its regulation in this case. Section 10.16(c)(4) specifically lists "permapressing" as a category of operations that are not "incidental to the assembly process." Further, it is conceded by Haggar that the oven-baking—which causes the chemical change in the fabric, imparting the "permapress" qualities—occurred only in Mexico. The pants left the United States without permapressed qualities; they returned permapressed. Customs did not err in applying section 10.16(c) to the goods in question.

## CONCLUSION

Customs' interpretation of HTSUS 9802.00.80, 19 U.S.C. § 1202, as found in 19 C.F.R. § 10.16(c), is reasonable and thus entitled to judicial deference. Further, Customs' application of section 10.16(c) to the permapressing operation conducted on Haggar's imported articles in this case is not incorrect. We therefore conclude that Customs' determination that the pants at issue do not qualify for the partial exception from duty allowed by HTSUS 9802.00.80 (and, in prior years, TSUS 807.00) must be sustained. The Court of International Trade's judgment to the contrary is accordingly reversed, and the case is remanded with instructions to

enter judgment in favor of the United States.

## COSTS

No costs.

## REVERSED AND REMANDED.