# United States Court of Appeals for the Federal Circuit

05-1357


DAIMLERCHRYSLER CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Lawrence M. Friedman, Barnes, Richardson & Colburn, of Chicago, Illinois, argued for plaintiff-appellant.  With him on the brief was Ilya A. Bakke.

Saul Davis, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee.  With him on the brief were Peter D. Keisler, Assistant Attorney General; and David M. Cohen, Director, of Washington, DC; and Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, of New York, New York.  Of counsel on the brief was Michael W. Heydrich, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from:  United States Court of International Trade

Chief Judge Jane A. Restani

# United States Court of Appeals for the Federal Circuit

05-1357

DAIMLERCHRYSLER CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  March 22, 2006

_____

Before SCHALL, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

DYK, <u>Circuit Judge</u>.

DaimlerChrysler Corporation ("Daimler") appeals from a decision of the United States Court of International Trade denying Daimler's motion to amend its summons to include additional protests.  The Court of International Trade concluded that it lacked jurisdiction over protests not listed in the original summons because the 180-day period for filing a summons to contest the denial of those protests had expired before the date of the proposed amendment.  <u>DaimlerChrysler Corp. v. United States</u>, 350 F. Supp. 2d 1339, 1341-42 (Ct. Int'l Trade 2004) (Chief Judge Restani).  We affirm.

BACKGROUND

I

In accordance with the Tariff Act of 1930,[1] the United States imposes duties on imported merchandise. In order to import merchandise, the importer must make "entry" of the merchandise by filing required documentation with Customs. 19 U.S.C. § 1484 (2000); 19 C.F.R. § 141.4 (2005). As part of the process by which the proper amount of duty is determined (called "liquidation"), Customs assigns imported merchandise a classification under the Harmonized Tariff Schedule of the United States ("HTSUS"), 19 U.S.C. § 1202.

Under section 515 of the Tariff Act, an importer may challenge Customs' liquidation of imports, including classification of merchandise under the HTSUS, by filing a "protest" with Customs. 19 U.S.C. §§ 1514(e), 1515 (2000). A protest may challenge the classification of a single entry of merchandise, or encompass a number of entries "if all such entries involve the same protesting party, and if the same category of merchandise and a decision or decisions common to all entries are the subject of the protest." 19 C.F.R. § 174.13(b) (2005). If Customs denies such a protest, it must notify the importer in writing of the denial. 19 U.S.C. § 1515(a) (2000).

Upon receipt of notice of denial of a protest, the importer may bring suit in the Court of International Trade to contest Customs' decision. 19 U.S.C. § 1514(a) (2000). The Court of International Trade has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a) (2000). Such a suit may be initiated only

---

[1] Pub. L. No. 361, 46 Stat. 590, 71st Cong., 2d Sess. (1930) (codified, as amended, at 19 U.S.C. § 1202, et seq.).

by "the person who filed the protest . . . or by a surety on the transaction which is the subject of the protest." 28 U.S.C. § 2631(a) (2000). To institute an action contesting the denial of a protest, the importer must have paid "all liquidated duties, charges, or exactions . . . at the time the action is commenced . . . ." 28 U.S.C. § 2637(a) (2000).

The time limit for commencing a suit is set out in 28 U.S.C. § 2636(a). Section 2636(a) provides:

> A civil action contesting the denial, in whole or in part, of a protest under section 515 of the Tariff Act of 1930 is barred unless commenced in accordance with the rules of the Court of International Trade—
> (1) within one hundred and eighty days after the date of mailing of notice of denial of a protest under section 515(a) of such Act; or
> (2) within one hundred and eighty days after the date of denial of a protest by operation of law under the provisions of section 515(b) of such Act.

Under 28 U.S.C. § 2632(b), "[a] civil action in the Court of International Trade under section 515 or 516 of the Tariff Act of 1930 shall be commenced by filing with the clerk of the court a summons, with the content and in the form, manner, and style prescribed by the rules of the court."

II

The facts of this case are undisputed. Daimler exported United States-origin sheet metal to Mexico for painting and assembly into motor vehicles, and then imported the vehicles into the United States. On a number of occasions, Daimler filed protests seeking a partial duty exemption for these imports pursuant to subheading 9802.00.80 of the HTSUS. Daimler argued that the vehicles qualified for the partial duty exemption because the painting conducted in Mexico was "incidental to the assembly process" under subheading 9802.00.80. Customs repeatedly denied Daimler's protests. Daimler filed a large number of cases in the Court of International Trade challenging the denial

of various protests. The Court of International Trade designated as a test case one of Daimler's suits challenging Customs' denial of such a protest and suspended 17 other cases. DaimlerChrysler Corp. v. United States, No. 99-03-00178, 2002 WL 31421861 (Ct. Int'l Trade 2002). We subsequently decided the classification issue in Daimler's favor in the test case, holding that Daimler was entitled to the partial duty exemption it claimed. DaimlerChrysler Corp. v. United States, 361 F.3d 1378, 1380 (Fed. Cir. 2004).

The present case was one of the 17 suspended actions. On November 7, 2002, Daimler filed with the Court of International Trade a summons in the form prescribed by the Rules of the Court of International Trade. The summons stated that it included 81 protests covering a total of 2105 entries, listed a single protest number, 2304-91-000043, and stated that "[a]dditional protests and entry numbers [are] continued on [the] attached 41 page[] . . . schedule of protests[.]" Daimler's Br., App. at 13. Despite the representations on the summons form, the attached schedule of protests listed only 74 individual protest numbers and only 1604 entries. Under the heading "Contested Administrative Decision," the summons referred to the "[d]enial of claimed classification under 9802.00.80 for painted sheet metal parts of motor vehicles." Id., App. at 14. Finally, the summons included the statement:

> Every denied protest included in this civil action was filed by the same above-named importer, or by an authorized person in his behalf. The category of merchandise specified above was involved in each entry of merchandise included in every such denied protest. The issue or issues stated above were common to all such denied protests. All such protests were filed and denied as prescribed by law. All liquidated duties, charges or exactions have been paid and were paid at the port of entry unless otherwise shown.

Id.

The schedule omitted seven protests covering more than 400 entries, and 97 entries from a protest that was specifically identified in the summons (protest no. 2304-93-100037). Thus the form correctly stated that it was designed to cover 81 protests, but failed to list seven of the protests.[2] The omitted protests had been denied on May 22, May 23, May 29, and October 4, 2002.

On November 5, 2004, more than 180 days after receiving notice of the denial of the protests, Daimler moved to amend the summons to include the omitted protests and entries. The court allowed Daimler to amend the summons to include the 97 entries covered by the listed protest because "[a]s long as the protests were included in some way, jurisdiction will attach to every entry listed in the protest itself." DaimlerChrysler, 350 F. Supp. 2d at 1341. The court barred addition of the seven omitted protests, however, concluding that while "the summons here was timely under 28 U.S.C. § 2636(a) as to whatever it covered," id. at 1341, "if there is no entry number on or attached to the summons and no protest number on or attached to the summons at the time it is filed, the general understanding that DaimlerChrysler intended to pursue this issue as to all possibly affected entries will not suffice" to include the omitted protests in the coverage of the summons. Id. at 1341-42 (emphasis in original). The court thus held that it had no jurisdiction over the omitted protests. Daimler appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).[3]

---

[2] Daimler states in its brief that the complete schedule that was to be attached to the summons "contained 83 protests." Br. of Daimler at 5. The correct number, including the seven omitted protests, appears to be 81, the number stated on the summons form.

[3] On February 24, 2005, the Court of International Trade entered a Rule 54(b) judgment with respect to "the entries dismissed for lack of jur[isdiction]."

DISCUSSION

We review jurisdictional determinations of the Court of International Trade without deference. <u>Xerox Corp. v. United States</u>, 289 F.3d 792, 794 (Fed. Cir. 2002).

I

Daimler's summons was filed within 180 days of Customs' denials of the relevant protests, including the omitted protests, but Daimler's motion to amend was filed more than 180 days after denial of the omitted protests. We held in <u>Pollak Import-Export Corp. v. United States</u>, 52 F.3d 303, 306 (Fed. Cir. 1995), that the 180-day time limit is jurisdictional. The question of whether the seven omitted protests were time-barred and thus outside the Court of International Trade's jurisdiction turns on the sufficiency of the summons as to those protests.

Daimler argues that <u>Pollak</u> holds that failure to comply with any Rule of the Court of International Trade requiring listing the protest numbers is not jurisdictional.[4] We held in <u>Pollak</u> that the failure to list the individual entries in a summons did not deprive the Court of International Trade of jurisdiction over those entries. The government argued that section 2632(b) requires that the summons have "the content and [be filed] in the form, manner, and style prescribed by the rules" of the Court of International Trade, and that those rules required listing each entry. 52 F.3d at 306 (internal quotation marks omitted). We rejected the government's argument and held that Congress did not intend that "all of the [Court of International Trade's] rules governing

---

DaimlerChrysler Corp. v. United States, No. 01-02-00717 (Ct. Int'l Trade Feb. 24, 2005) (order entering Rule 54(b) judgment).

[4] The form of the summons prescribed by the Rules of the Court of International Trade provides a space for listing the protest numbers. R. Ct. Int'l Trade, App., Form 1. Thus, listing the protest numbers is arguably required by the Rules.

the timely institution of a civil action challenging a protest and the detailed requirements for the form and content of the summons [constitute] a jurisdictional element of the suit." 52 F.3d at 307.[5] We interpreted sections 2632(b) and 2636(a) to "impose only two jurisdictional requirements: that a suit be instituted by filing a summons and that the suit be filed within 180 days after the denial of a protest." Id. at 306. "Because § 2636(a)(1) operates as a waiver of sovereign immunity, this court must 'strictly construe [this statute] in favor of the sovereign.'" Autoalliance Int'l, Inc. v. United States, 357 F.3d 1290, 1293 (Fed. Cir. 2004) (quoting Lane v. Pena, 518 U.S. 187, 192 (1996)) (brackets in original).

While in Pollak we held that failure to comply with the Rules of the Court of International Trade is not jurisdictional, we did not address, explicitly or implicitly, the jurisdictional effect under the statute of the failure to list the protest numbers. In Pollak the summons specifically identified the challenged protest by number, id. at 305, and no issue was raised concerning the statute's requirements regarding the identification of protests. Thus Pollak does not govern the issue in this appeal.

II

As a general matter, the initial pleading in a federal court action serves two purposes: (1) It establishes the court's jurisdiction over the action; and (2) It puts the adverse party on notice of the commencement and subject-matter of the suit. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1205, at 109, § 1215, at

---

[5] See also Durr v. Nicholson, 400 F.3d 1375, 1382-83 (Fed. Cir. 2005) (holding that "the Veterans' Court's rules cannot limit the jurisdiction of the Veterans' Court"). However, in United States v. Fairfield Gloves, 558 F.2d 1023, 1025-27 (C.C.P.A. 1977), our predecessor court upheld as a valid exercise of the Customs Court's statutory rulemaking authority a rule fixing the time of filing of the summons as the date of mailing.

173 (3d ed. 2004). Daimler argues that as in district court actions, here the complaint, and not the summons, is the initial pleading. We disagree.

The statute imposes no requirement that a complaint be filed, and even the Rules of the Court of International Trade, while requiring a complaint,[6] establish no set time period for the filing of the complaint. On the face of the statute, the summons serves as the initial pleading. Section 2632(b) explicitly states that an action in the Court of International Trade contesting the denial of a protest "shall be commenced by filing . . . a summons." The important role of the summons as the initial pleading indicating that a protest was denied is confirmed by legislative history of the statute. Before 1970, denial of a protest was sufficient to automatically confer jurisdiction on the Customs Court to review Customs' decision. See S. Rep. 91-576, at 7-10 (1969) (accompanying the Customs Courts Act of 1970). Congress, concerned about the backlog of cases created by this automatic referral system, introduced the requirement that the importer invoke the Customs Court's jurisdiction by filing a summons. Id. at 10-12, 18. In 1980 when Congress expanded the jurisdiction of the Customs Court to encompass new kinds of suits, Pub. L. No. 96-417 § 201, 94 Stat. 1727, 1728-29, 96th Cong. 2d Sess. (Oct. 10, 1980), Congress determined that, in general, "a civil action in the Court of International Trade shall be commenced by filing concurrently with the clerk of the court a summons and complaint . . . ." Id., 94 Stat. at 1732 (enacting the current version of 28 U.S.C. § 2632(a)). Congress explicitly chose, however, to retain the provision from the prior act requiring that only a summons be initially filed to commence

---

[6]     R. Ct. Int'l Trade 7(a).

an action contesting the denial of a protest.[7]  Id. (enacting what is now 28 U.S.C. § 2632(b)); H.R. Rep. 96-1235, at 15 (1980) (noting that section 2632(b) "restates existing law with respect to" actions contesting the denial of a protest).

We conclude that the initial pleading in actions to contest the denial of a protest is the summons.

A

As the initial pleading, the summons must establish the court's jurisdiction. Federal courts established under Article III of the Constitution, such as the Court of International Trade,[8] are courts of limited jurisdiction, Delaware v. Van Arsdall, 475 U.S. 673, 692 (1986), and are presumed to be "without jurisdiction" unless "the contrary appears affirmatively from the record." King Iron Bridge & Mfg. Co. v. Otoe County, 120 U.S. 225, 226 (1887); see also Thomas v. Bd. of Trs., 195 U.S. 207, 210 (1904); Minnesota v. N. Secs. Co., 194 U.S. 48, 62-63 (1904); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1206, at 110 (3d ed. 2004).  Accordingly, it is settled that a party invoking federal court jurisdiction must, in the initial pleading, allege sufficient facts to establish the court's jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); KVOS, Inc. v. Assoc. Press, 299 U.S. 269, 277-78 (1936); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure

---

[7]    What is now section 2632(b) was initially enacted as section 2632(a) in the Customs Courts act of 1970, Pub. L. No. 91-271, § 113(a), 84 Stat. 274, 279, 91st Cong., 1st Sess. (June 2, 1970).

[8]    28 U.S.C. § 1585; see also H.R. Rep. No. 96-1235, at 19-20 (1980), as reprinted in 1980 U.S.C.C.A.N. 3729, 3731 (explaining that the Customs Courts Act of 1980 made clear the Article III status of the Court of International Trade).

§ 1206, at 117-18.[9]   It is also settled that a plaintiff must establish jurisdiction independently for each cause of action asserted.  See, e.g., Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004); Rifkin v. Bear Stearns & Co., Inc., 248 F.3d 628, 634 (7th Cir. 2001).

The plain language of the pertinent statutes establishes that the Court of International Trade has jurisdiction only to review "the denial of a protest," and that each protest denial is the basis of a separate claim.  28 U.S.C. §§ 1581(a), 2631(a), 2635(a), 2636(a) (referring to "[a] civil action contesting the denial, in whole or in part, of a protest") (emphasis added), 2637(a), 2638 (referring to "any civil action . . . in which the denial, in whole or in part, of a protest is a precondition to the commencement of a civil action" (emphasis added)).[10]   Thus, the filing of a protest is a jurisdictional requirement. See Autoalliance, 357 F.3d at 1293-94.  In United States v. Novelty Imports, Inc., 476 F.2d 1385 (C.C.P.A. 1973), our predecessor court expressly adopted the Customs Court's conclusion[11] that "Congress intended to treat each denied protest as a separate entity or cause of action."  Novelty Imports, Inc. v. United States, 341 F. Supp. 1228, 1231 (Cust. Ct. 1972).  Because each protest forms the basis for a separate cause of

---

[9]      We have previously applied this principle to actions in courts other than federal district courts.  See, e.g., Butler v. Principi, 244 F.3d 1337, 1340 (Fed. Cir. 2001) (applying this rule to the Court of Appeals of Veterans Claims); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (applying the rule to the Court of Federal Claims).

[10]      19 U.S.C. § 1514(a) provides in pertinent part that liquidation decisions are final "unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest . . . is commenced in the United States Court of International Trade . . . ."  (emphasis added).  Though Daimler did not raise the issue, the government argues at great length that this language cannot be read to confer jurisdiction on the Court of International Trade unless a protest has been filed.  In the light of the statutory provisions discussed in the text, this is obviously correct.

[11]      See id. at 1387 ("We fully agree with the reasoning and conclusion of Judge Rao's well reasoned memorandum, and adopt them as our own.").

action, the summons must establish the Court of International Trade's jurisdiction as to each protest. The essential jurisdictional fact -- the denial of the protest -- simply cannot be affirmatively alleged without specifically identifying each protest involved in the suit.

Daimler's summons failed to identify the seven omitted protests; thus Daimler's jurisdictional allegation was inadequate. Neither general statements of the subject matter of the protests nor listing of the total number of protests at issue in the suit is sufficient. As the Supreme Court held in Thomas v. Board of Trustees of Ohio State University, 195 U.S. 207, 218 (1904), "the jurisdiction of a court of the United States must appear from distinct allegations, . . . and is not to be established argumentatively or by mere inference." "It is not enough that grounds of jurisdiction . . . may be inferred argumentatively from the statements in the [initial pleading], for jurisdiction cannot rest on any ground that is not affirmatively and distinctly set forth." Shulthis v. McDougal, 225 U.S. 561, 569 (1912); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1206, at 117-18 (3d ed. 2004).

Nothing in our decision in Zenith Electronics Corporation v. United States, 988 F.2d 1573 (Fed. Cir. 1993), is to the contrary. Zenith involved an action brought under 19 U.S.C. § 1516a to challenge a "determination" of the International Trade Commission not to initiate an antidumping investigation.[12] The plaintiff in Zenith listed an incorrect

---

[12] Section 1516a(a)(1)(A) provides:
Within 30 days after the date of publication in the Federal Register of -- (A) a determination by the administering authority under [section] 1671a(c) or 1673a(c) of this title, not to initiate an investigation, . . . an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing concurrently a summons and complaint, each with the content and in the form, manner, and style prescribed by the rules of that court,

determination number in the summons.  We affirmed the Court of International Trade's decision to allow the plaintiff to amend the summons to correct this error on the ground that "NEC's cover letter and information sheet correctly identified [by number] the antidumping determination that NEC sought to challenge."  Zenith, 988 F.2d at 1580. We need not decide here whether, if a protest is misidentified in the summons, the court may look to other contemporaneously filed documents to determine the correct protest number.  Here there is no claim that the protest numbers appeared in other documents filed with the summons.  The information form that accompanied the summons (Form 5 in the Appendix of Forms of the Rules of the Court of International Trade) did not list the protest numbers.  Thus, the Zenith issue is not presented in this appeal.  If anything, Zenith underscores the importance of stating necessary jurisdictional facts (there, the specific antidumping determination) on the face of the summons documents.

B

Another essential purpose of the summons, as the initial pleading, is to put the government on notice of what protest decisions are being contested in the Court of International Trade.  See 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1215, at 173-74 (describing the notice function as "the core of the [federal] pleading process").  Again, the notice function of the summons is similar to that of a complaint in federal district court.  Just as a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," the summons must give the government fair notice of the importer's "claim [] and the grounds upon

_____

contesting any factual findings or legal conclusions upon which the determination is based.
(emphasis added)

05-1357                                            12

which it rests." Conley v. Gibson, 355 U.S. 41, 47-48 (1957); see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1202, at 92-94.

Protest denials are not identified by number. Rather, both the government and the importer refer to the number of the protest itself. Daimler appears to concede that the summons must give the government fair notice of which protests are involved. But Daimler insists that specifying on the summons form: "1. the port of entry; 2. the importer; 3. the type of merchandise; 4. the challenged classification; 5. the protest claim; 6. the challenged decision of the Port Director; and 7. the issue common to all the protests[,]" is sufficient to provide notice of the protests at issue in the suit. Reply Br. of Daimler at 6-7. We disagree. Items 1 through 4 give only basic information, and do nothing to identify the particular protests involved. Nor do items 5, 6 and 7 specifically identify any one protest -- rather, they represent the legal theory common to all the protests and the legal theory common to all decisions denying the protests.

In fiscal year 2005, Customs processed 29 million individual entries of imported merchandise at 322 ports of entry. United States Customs & Border Protection, Performance & Accountability Report: Fiscal Year 2005, at 6. The corresponding volume of protests is necessarily large, though exact numbers of protests are not published. Requiring the government to sift through a large number of protests for a single importer at a particular port to identify all those that pertain to a certain type of merchandise or a certain legal issue would necessarily be burdensome and time-consuming. The burdens are increased by the government's document production

duties in protest cases. Under 28 U.S.C. § 2635(a), after receipt of a summons commencing an action contesting denial of a protest, Customs must "file with the clerk of the [Court of International Trade], as part of the official record, any document, paper, information or data relating to the entry of merchandise and the administrative determination that is the subject of the protest or petition." Without identification of the specific protests at issue, this process would be substantially more difficult. The government's document retention obligations are also made uncertain if the government cannot identify with precision the protests covered by a summons.

Even more significant, while stare decisis of course applies, the typical res judicata rules do not apply in protest cases.[13] "[C]ollateral estoppel does not prevent an importer from successive litigation over the classification of merchandise, even when the subsequent importations involve the 'same issues of fact and the same questions of law.'" Avenues In Leather, Inc. v. United States, 317 F.3d 1339, 1403 (Fed. Cir. 2003) (quoting Stone & Downer, 274 U.S. at 234).[14] Importers thus may intentionally omit related protests from a summons to preserve the opportunity to relitigate the issues in a later suit. Congress acknowledged this feature of protest litigation in creating the present statutory scheme. Congress recognized that multiple suits might be brought raising the same issue because "either the importer or the government might be dissatisfied with the trial of the decided case or feel that additional testimony or arguments are available which will result in a different decision and, therefore, will

---

[13] United States v. Stone & Downer Co., 274 U.S. 225, 235-36 (1927); Schott Optical Glass, Inc. v. United States, 750 F.2d 62, 64 (Fed. Cir. 1984).
[14] See also Schott, 750 F.2d at 64 ("The opportunity to relitigate applies to questions of construction of the classifying statute as well as to questions of fact as to the merchandise.").

decide to retry the issue rather than abide by the decision in the earlier case." S. Rep. 91-576, at 8 (1969).

Because the importer may omit particular protests in a summons in order to preserve the right to relitigate the issue, the government has no reason to assume that all related protests are intended to be included in a given suit. Under these circumstances, a summons can provide fair notice only if the contested protests are identified with particularity.

## III

Daimler failed to identify the seven protests in the summons. The summons was therefore insufficient to "commence an action" in the Court of International Trade as to the seven omitted protests within the 180-day limitation period. The Court of International Trade correctly denied Daimler's motion to amend the summons on the ground that the omitted protests were time-barred and thus beyond the court's jurisdiction.

## CONCLUSION

The decision of the Court of International Trade is

## AFFIRMED.

## COSTS

No costs.