**Slip Op. 09–8**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| INTERNATIONAL CUSTOM PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | **Before: Gregory W. Carman, Judge** <br><br> Court No. 07-00318 |

[*Plaintiff's motion for summary judgment is denied; Defendant's cross motion for summary judgment is denied.*]

Mayer Brown LLP (Simeon M. Kriesberg, Andrew A. Nicely, Jefferey C. Lowe and Evan P. Schultz) for Plaintiff.

Michael F. Hertz, Deputy Assistant Attorney General; Jeanne E. Davidson, Director; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Edward F. Kenny); Yelena Slepak, Office of the Assistant Chief Counsel, Int'l Trade Litigation, U.S. Customs and Border Protection, of counsel, for Defendant.

January 29, 2009

**OPINION & ORDER**

CARMAN, JUDGE: The matter before this Court is Plaintiff's Motion for Summary

Judgment and Defendant's Cross-Motion for Summary Judgment. Based on the

genuine issues of material facts identified below, this Court denies Plaintiff's Motion for

Summary Judgment and also denies Defendant's Cross-Motion for Summary Judgment.

## PROCEDURAL HISTORY

This issue first appeared before this Court in 2005. Plaintiff–International

Custom Products, Inc. ("ICP" or Plaintiff)–once again seeks relief from an action taken

by U.S. Customs and Border Protection ("Customs") to reclassify 100 entries (the

"Affected Entries") of ICP's imported product, "white sauce," under a different tariff

heading than the one it had announced it would use in a 1999 advanced classification

ruling. While challenges to tariff classification are typically brought before this court

under 28 U.S.C. § 1581(a), for reasons set forth in its opinion at that time, ICP sought,

and this Court found it had jurisdiction over ICP's case under 28 U.S.C. § 1581(i)(4)

(2000). Int'l Custom Prods., Inc. v. United States, 29 CIT 617, 374 F. Supp. 2d 1311 (2005)

("ICP I"). The Court of Appeals for the Federal Circuit reversed this jurisdictional

decision, holding the remedy available to Plaintiff under section 1581(a) was not

manifestly inadequate, and that jurisdiction under section 1581(i)(4) was therefore

unavailable. Int'l Custom Prods., Inc. v. United States, 467 F.3d 1324 (Fed. Cir. 2006).

ICP now alleges that it has complied with the jurisdictional requirements under 28

U.S.C. § 1581(a), and accordingly petitions this Court to reinstate the relief that it

previously granted in ICP I.

In an Opinion and Order dated March 31, 2008, this Court dismissed two of

Plaintiff's claims–Count III and Count IV (that Defendant failed to demonstrate a

"compelling reason" for revoking its prior ruling, and that Defendant violated the

Administrative Procedures Act, respectively)–pursuant to a USCIT Rule 12(b)(5) motion

to dismiss by Defendant.  Int'l Custom Prods., Inc. v. United States, 32 CIT ___, 2008 WL

2104868, (May 20, 2008).  Plaintiff's remaining claims–Counts I, II and V (that Defendant

violated 19 U.S.C. §§ 1625(c)(1) and (c)(2), and that Defendant violated Plaintiff's Due

Process Rights under the Fifth Amendment to the U.S. Constitution,

respectively)–survived the motion to dismiss and are now the subject of the cross

motions for summary judgment now before the Court.

### FACTUAL BACKGROUND

Familiarity with both this Court's previous decisions in this case and the facts

underlying this litigation is generally presumed, but a brief recitation is provided here

for convenience.  ICP is an importer and distributor of dairy ingredients, including a

product it refers to as "white sauce."[1]  (Pl.'s Stmt. Of Undisputed Facts in Supp. of its

---

[1]The Government has indicated its belief "that ICP's reference to its good as a 'white sauce' was inaccurate; [the Government has therefore decided to] refer to ICP's imported merchandise . . . as a dairy spread."  (Def.'s MSJ Mem. at 1 n.1.)  The Court notes Defendant's objection to the nomenclature, but will continue to refer to the product by the name given by Plaintiff for the sake of consistency with prior opinions. By hereinafter referring to the product as "white sauce" the Court makes no accompanying judgment as to the accuracy of this term in describing the product in

Mot. for Summ. J. ("Pl.'s Facts") ¶ 4; Def.'s Mem. In Supp. of its Cross-Mot. for Summ. J. and in Opp. to Pl.'s Mot. for Summ. J. ("Def's MSJ Mem.") 1.)  "White sauce" is a milkfat based product that serves as the base for gourmet sauces, salad dressings, processed cheeses, club cheese preparations, baked goods, butter based sauces and this litigation.  (Pl.'s Facts ¶ 1; Def.'s Resp. To Pl.'s Stmt. Of Material Facts ("Def.'s Resp. Facts") ¶ 1; Def. Stmt. of Undisputed Facts ("Def.'s Facts") ¶¶ 8-9; Pl.'s Resp. to Def.'s Stmt. of Undisputed Facts ("Pl.'s Resp. Facts") ¶¶ 8-9.)

In 1998, prior to importing its first shipment of "white sauce," Plaintiff sought a binding tariff classification ruling from Customs.  (Pl.'s Facts ¶ 1; Def.'s Facts ¶ 1.)  On January 20, 1999, Customs issued advance ruling NYRL D86228, which classified the product described in Plaintiff's ruling request in Harmonized Tariff Schedule of the United States ("HTSUS") tariff subheading 2103.90.9060.[2]  (Pl.'s Facts ¶ 2; Def.'s Facts ¶ 2 (admitting that the tariff subheading was 2103.90.90).)  HTSUS tariff subheading 2103.90.9060 has since been renumbered and is currently tariff subheading

question.

[2]HTSUS (1999) tariff subheading 2103.90.9060 provided for "[s]auces and preparations therefor; . . . : [o]ther: [o]ther: [o]ther: [o]ther" at a duty rate of 6.6% ad valorem.

2103.90.9091.[3]  Plaintiff asserts that it has imported "white sauce" in reliance upon this ruling "from 1999 through late April 2005."  (Pl.'s Facts ¶ 4; Def.'s Resp. Facts ¶ 4.)

On April 18, 2005, after making an additional inquiry with ICP and its primary customer about the nature and use of "white sauce," Customs concluded that the product had not been accurately described by its ruling NYRL D86228 and issued a Notice of Action reclassifying all unliquidated entries and all future shipments of the product under HTSUS tariff subheading 0405.20.3000.  (Pl.'s Facts ¶ 23; Def.'s Facts ¶ 20.)  The Notice of Action affects 100 entries–86 entries that were specified in the Notice itself, 3 entries that were entered in April 2005, but not included in the Notice, and 11 entries that were released from a bonded warehouse pursuant to the temporary restraining order granted by this Court in Int'l Custom Prods., Inc. v. United States, Court No. 05-00509 (Ct. Int'l Trade Sept. 15, 2005) ("ICP II").  (See also Compl. ¶ 13; Answer ¶ 13.)  The result of Customs' reclassification of Plaintiff's imported "white sauce" is a "duty rate that is some 2400 percent higher than the rate mandated by ICP's advance ruling."  (Pl.'s Mem. of P. & A. in Supp. of its Mot. for Summ. J. ("Pl.'s MSJ Mem.") 3.)

---

[3]HTSUS (2005) tariff subheading 2103.90.9091 provides for "[s]auces and preparations therefor; . . . : [o]ther: [o]ther: [o]ther: [o]ther" at a duty rate of 6.4% ad valorem.

Customs has now liquidated or reliquidated "at least 99" of the entries of Plaintiff's product at the higher tariff rate under the reclassified HTSUS tariff subheading 0405.20.3000. (Pl.'s Facts. ¶ 28; Def.'s Resp. Facts ¶ 28.) Specifically, Entry No. 180-05900297 (the "Entry") was liquidated on June 29, 2007. (Pl.'s Facts ¶ 24, Def.'s Resp. Facts ¶ 24.) On July 26, 2007 ICP timely protested the liquidation of the Entry, with a request for accelerated disposition, which was deemed denied 30 days after it was submitted by certified mail, pursuant to 19 U.S.C. § 1515(b) (2000). (Compl. ¶ 16; Answer ¶ 16.) Plaintiff paid all the duties that Customs assessed on the Entry by August 27, 2007. (Pl.'s Facts ¶ 27, Def.'s Resp. Facts ¶ 27.) Plaintiff now asserts that this Court has jurisdiction under 28 U.S.C. § 1581(a), and asks the Court to reinstate much of the relief it granted in ICP I.

## JURISDICTION

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1581(a). See Int'l Custom Prods., Inc., 467 F.3d at 1326-27. However, that jurisdiction covers one, and only one entry of "white sauce"–Entry No. 180-05900297. This conclusion was previously articulated by the Court when it denied Plaintiff's Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("TRO/PI Motion") in this case. International Custom Prods., Inc. v. United States, 32 CIT ___, 2008 WL 2104868 (May 20, 2008). This Court there noted, and here reaffirms that

Plaintiff has satisfactorily commenced this lawsuit only with respect to Entry 180-

05900297–and no jurisdiction has been established over any other entry of "white

sauce."  Id. at *1.

For one reason or another, Plaintiff persists in its argument that this Court may

grant relief with respect to all 100 entries of "white sauce."  (Compl. at 16 "Request for

Judgment and Relief.")  Even after this Court explained the limits of its jurisdiction in

this case while denying the TRO/PI Motion, Plaintiff has continued to argue that it is

entitled to all of the relief requested in its prayer for relief–reaching all 100 entries.

(Compare Pl.'s MSJ Mem. 25-28 (Jan. 4, 2008) ("ICP is entitled to all of the relief request

in its prayer for relief."), with Pl.'s Rep. Mem. 40 (Nov. 21, 2008) ("[T]he Court should

grant ICP all of the relief to which ICP is entitled in its request for relief, including

reclassification of the relevant entries in accordance with the advance ruling.").)

Plaintiff contends that the Court's ability to provide relief with respect to these

additional entries is not a question of the Court's jurisdiction.  (See Pl.'s MSJ Mem. 25-

28.)  Rather, Plaintiff advocates that the Court may exercise its "equitable powers" to

grant relief with respect to all additional entries once Plaintiff has crossed the threshold,

so to speak, via the protest, denial, and deposit of duties of a single entry.  (Id.)  Plaintiff

cites a handful of cases for the proposition that once this Court determines it has

jurisdiction, it may provide any "appropriate relief," that the Court's equitable powers

may "not [be] fettered by the scope of its jurisdiction, once jurisdiction is established,"[4]

and that the Court may "protect the validity of its judgments."[5]  (Id. at 25-27.)

Plaintiff has cited no authority, and this Court believes no authority exists, for

the idea that protest and payment of duties of one entry of a given good is sufficient to

confer jurisdiction over multiple entries of a given good.  Plaintiff's contentions, in this

respect, are unavailing.  The jurisdictional statute in question requires that this Court

"shall have exclusive jurisdiction of any civil action commenced to contest the denial of

a protest, in whole or in part, under section 515 of the Tariff Act of 1930."  28 U.S.C.

§ 1581(a) (2000).  The plain language of this statute confers upon this Court only the

jurisdiction "to review the denial *of a protest* and . . . each protest denial is the basis of a

---

[4]For this proposition, Plaintiff cites Rhone Poulenc, Inc. v. United States, 880 F.2d 401, 403 (Fed. Cir. 1989).  This Court notes that rather than supporting Plaintiff's contentions, Rhone Poulenc underscores the problems posed by Plaintiff's failure to establish subject matter jurisdiction over the remaining entries at issue in the present case:

> [T]here is a fundamental distinction between a court's subject matter jurisdiction and its equitable powers.  The former must exist before the latter may be exercised.  The former concerns the authority of a court to hear and decide, given the subject matter of the case; the latter concerns the remedial relief a court having that authority may grant.

Id. at 402.

[5]For this proposition, Plaintiff cites United States v. Hanover Insurance Co., 82 F.3d 1052, 1054 (Fed. Cir. 1996).  While this Court agrees that it has the inherent equitable power to protect the validity of its judgments, this case does nothing to demonstrate that the Court, in fact, has jurisdiction over all 100 entries of "white sauce." It is simply inapposite.

separate claim." <u>DaimlerChrysler Corp. v. United States</u>, 442 F.3d 1313, 1319 (Fed. Cir. 2006) (emphasis in original, internal quotation omitted). The statutory prerequisites to filing suit are "that Customs has denied the protest containing the entry; that the importer paid all liquidated duties, charges, or exactions for the entry; and, that the importer filed a summons listing either the protest or entry number within 180 days of the denial of the protest." <u>Int'l Custom Prods., Inc.</u>, 2008 WL 2104868 at *1, n.3 (citing 28 U.S.C. §§ 2636(a), 2637 (2000); <u>DaimlerChrysler</u>, 442 F.3d at 1313.).

As this Court held once before, "[s]ince the tender of additional duties determined to be due on liquidation is a condition precedent to invoking the jurisdiction of this court pursuant to 28 U.S.C. § 2637(a) . . . this court lacks subject matter jurisdiction as to all entries for which the additional duties have not been paid." <u>Am. Air Parcel Forwarding Co., Ltd. v. United States</u>, 6 CIT 146, 150, 573 F. Supp. 117, 120 (Ct. Int'l Trade 1983); <u>aff'd</u> 718 F.2d 1546, 1550 (Fed. Cir. 1983) ("[T]he statutory requirements that a protest must be filed . . . or that duties must be paid before commencing a civil action involving the protest [may not be waived].") In this case, Plaintiff concedes the salient point — that it has only paid the liquidated duties of the one entry listed on its summons. Consequently, this Court finds that Plaintiff has successfully established jurisdiction over only that one entry–Entry No. 180-05900297.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT R. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). A factual dispute is material if it might affect the outcome of the suit under the governing law. <u>See</u> <u>id.</u> at 248. Accordingly, the court may not decide or try factual issues upon a motion for summary judgment. <u>See</u> <u>Phone-Mate, Inc. v.. United States</u>, 12 CIT 575, 577, 690 F.Supp. 1048, 1050 (1988). Further, "[t]he inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion," <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962), and the court "must resolve all doubt over factual issues in favor of the party opposing summary judgment." <u>SRI Int'l v. Matsushita Elec. Corp. of Am.</u>, 775 F.2d 1107, 1116 (Fed. Cir. 1985). When genuine issues of material fact are not in dispute, summary judgment is appropriate if a moving party is entitled to judgment as a matter of law. <u>See</u> USCIT R. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

**ANALYSIS**

**I.**     <u>**Count I–Plaintiff Claims That Customs Violated 19 U.S.C. § 1625(c)(1).**</u>

In Count I of its complaint, Plaintiff argues that Customs violated 19 U.S.C.

§ 1625(c)(1) by revoking or attempting to revoke ICP's advance ruling with a Notice of

Action. That statute states:

> A proposed interpretive ruling or decision which would–
>> (1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days
>>
>> . . .
>
> shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

19 U.S.C. § 1625(c) (2000) (emphasis added). Plaintiff points out that this section

"establishes a notice and comment procedure that Customs must follow before it makes

an interpretive ruling or decision that modifies . . . or revokes a prior interpretation

ruling or decision which has been in effect for at least 60 days." (Pl.'s MSJ Mem. 15

(internal changes and quotations omitted).) Plaintiff asserts that "Customs does not

have any discretion to deviate from the notice and comment provisions of section 1625

when it seeks to modify or revoke an advance classification ruling." (Id. at 16.)

In order to prevail on its section 1625(c)(1) claim in this case, Plaintiff is required

to show at least three things. First, Plaintiff must show it obtained "a prior interpretive

ruling or decision which has been effect for at least 60 days."  19 U.S.C. § 1625(c).

Second, Plaintiff must show that the Government made "a proposed interpretive ruling

or decision which would . . . modify . . . or revoke" that prior ruling, without following

the specific requirements of the statute.  Id.  Third, Plaintiff must show that it entered

goods that conformed to the description of goods in the prior interpretive ruling or

decision.  Without a showing on this third item, Plaintiff cannot obtain the requested

relief, i.e., re-liquidating "white sauce" in accordance with the tariff classification set

forth in the initial ruling letter.

> ### A.     Genuine Issue of Material Fact.

This Court finds that there is a genuine issue of material fact as to whether the

actual goods Plaintiff imported conform to the description of "white sauce" in NYRL

D86228.  Defendant has presented several pieces of evidence that call this key fact into

question.  First, Defendant obtained, through discovery, a specification sheet from ICP's

chief customer that appears to be for the same product described in the ruling letter, but

which does not include certain ingredients found in the specification sheet ICP initially

provided to Customs in obtaining its ruling letter.  (Def.'s Facts ¶ 5; Pl.'s Resp. Facts p.3

¶ 5; see also Def.'s Exs. 4 (Bates Stamp # 239), and 18 (Bates Stamp # ICP 000016).)  The

product described in NYRL D86228 consists of "milkfat, water, vinegar (and/or lactic

acid and/or citric acid), zanthan gum, carboxymethelcellulose, sodium phosphate

(and/or sodium citrate)." (Def.'s Ex. 18.) The specification sheet obtained from ICP's primary customer does not contain zanthan gum (also interchangeably referred to as zanthum gum or xanthan gum) or carboxymethelcellulose (also spelled carboxymethylcellulose). (Def.'s Exhibit 4.) Plaintiff contends that these two ingredients were omitted from the specification sheet provided to its customer at the customer's request, but that the ingredients were not omitted from the actual "white sauce" that ICP provided to that customer. (Pl.'s Resp. Facts p.10 ¶ 5.) The existence or nonexistence of these ingredients in the product imported by Plaintiff, particularly in the single entry of "white sauce" at issue in this litigation, presents a genuine issue of material fact that must be determined at trial.

Defendant has also presented some evidence that the milkfat content of Plaintiff's imported product deviated from the range of milkfat content Plaintiff asserted the "white sauce" would contain when it applied for NYRL D86228. Although the initial ruling letter itself does not specify a milkfat content (see Def.'s Ex. 18), the specification sheet Plaintiff provided to Customs in its request for a ruling letter does specify a milkfat content. In the "typical analysis" section of that specification sheet, "white sauce" is said to consist of "72-77.00%" milkfat. (Def.'s Ex. 2.) Defendant obtained, through discovery, two contracts between ICP and its largest customer for several million pounds of "White Sauce, Kosher, 77.5% milkfat." (Def.'s Ex. 13.) To explain this

apparent discrepancy, Plaintiff asserts that the 77.5% figure is calculated using a "by-difference" method, which is inherently imprecise, and tends to overstate the actual milkfat percentage by a small amount. (Pl.'s Rep. Mem 20-24.) Even if Plaintiff is correct that there are two alternative ways of calculating milkfat, this Court finds that a genuine issue of material fact remains. Namely, in light of Defendant's evidence, it must be established whether or not the Entry of "white sauce" at issue in this litigation, Entry No. 180-05900297, had a milkfat percentage that conformed with NYRL D86228.

For the foregoing reasons, the Court denies Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment on Count I of Plaintiff's Complaint alleging a violation of 19 U.S.C. § 1625(c)(1).

## II.     Count II–Plaintiff Claims That Customs Violated 19 U.S.C. § 1625(c)(2)

In Count II of its Complaint, Plaintiff alleges that Customs violated 19 U.S.C. § 1625(c)(2). That statute states, in pertinent part,

> A proposed interpretive ruling or decision which would–
> . . .
> (2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;
>
> shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

19 U.S.C. § 1625(c)(2) (2000) (emphasis added). In order to prevail on this claim,

Plaintiff must establish at least four things. First, it must demonstrate what was "the

treatment previously accorded by the Customs Service." 19 U.S.C. § 1625(c)(2). That is,

it must show what entries of "white sauce" were previously classified under the desired

tariff subheading for "sauces and preparations thereof." Second, Plaintiff must prove

that the Entry at issue here is a "substantially identical transaction" to the previous

treatment. Id. Third, Plaintiff must prove that Customs has made a "proposed

interpretive ruling or decision" that would have the effect of modifying the previous

treatment with respect to the Entry in question. Id. Fourth, Plaintiff must prove that

the proposed interpretive ruling or decision violated the notice and comment

requirements of this statute. See id.

### A.      Genuine Issue of Material Fact

Attempting to demonstrate the first element listed above–which action of

Customs constitutes the "prior treatment"–Plaintiff alleges that "[f]rom as early as 1988

until April 2005, Customs classified imported white sauce under HSTUS 2103.90.9060

(previously numbered HTSUS 2103.90.9091)." (Pl.'s Mot. for Summ. J. ¶ 2.) Plaintiff

also asserts, more specifically, that "[f]rom 1999 through late April 2005, Customs

consistently classified the white sauce under HTSUS 2103.90.9060/.9091 in accordance

with ICP's ruling."  (Pl.'s Facts ¶ 5.)  Plaintiff contends that this classification

"constitutes a 'treatment'" within the meaning of section 1625(c)(2).  (Compl. ¶ 36.)

However, the Court finds that the evidence offered by Plaintiff to demonstrate this

treatment is meager, at best, and perhaps nonexistent.

To substantiate its claim, ICP offers an affidavit from its President and founder,

Dennis Raybuck.  (Confidential Appx. in Support of Pl.'s Mot. for Summ. J. and Pl.'s

Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Ex.") Tab 1.)  Mr. Raybuck asserts in his

declaration,

> From 1989 to 1994, ICP annually purchased dozens of containers of white
> sauce from an importer of food products based in New Jersey.  Pursuant to
> an advance classification issued to that importer, all of the imported white
> sauce that we purchased from the importer was, to the best of my
> knowledge, classified as 'sauces and preparations therefor' under HTSUS
> 2103.

(Id. at ¶ 7.)  This statement closely shadows an assertion ICP made when it requested its

initial ruling letter for "white sauce" in 1998.  There, ICP set forth:

> It is believed that there was a letter ruling issued to unknown [sic] company
> during the period of 1989-1994.  At that time, white sauce was imported from
> Israel by a company named Three Diegos Import/Export Company.  A search
> has not found a letter ruling on this product or to this company.  There may
> be one, but we have not been able to locate it.

(Def.'s Exhibit 2 (Bates Stamp # ICP000002).)  Apart from this bald assertion made "to

the best of [Mr. Raybuck's] knowledge," Plaintiff has offered no evidence that these

alleged importations of "white sauce" from 1989-1994 ever occurred, much less the composition or classification of said "white sauce." Consequently, it would seem that these entries cannot serve as the basis for "prior treatment" within the meaning of section 1625(c)(2).

The only entries of "white sauce" that could potentially satisfy the prior treatment requirement would be Plaintiff's own importation of "white sauce" between 1999 and 2003. All of the Affected Entries (i.e., those affected by the 2005 Notice of Action) were entered between 2003 and 2005. (See Summons, Attachments A and B.) Because Customs never liquidated the Affected Entries under tariff subheading 2103.90.9091, they cannot be the basis for the "prior treatment" that would trigger the applicability of section 1625(c)(2). Rather, based on the facts Plaintiff has alleged, only ICP's own entries of "white sauce" from 1999 to 2003, which were actually liquidated at HTSUS subheading 2103.90.9091, could possibly qualify as "prior treatment" for the purposes of section 1625(c)(2).

However, there is no record before the Court of any such entries. Plaintiff has not identified the Entry Numbers of any "white sauce" entries from this time period that are supposed to qualify for this purpose. On the other hand, Defendant has not disputed the existence of these entries. Indeed, Defendant admits that some goods imported by Plaintiff, entered from 1999 through late April 2005, have been classified

under HTSUS 2103.90.90. (Def.'s Resp. Facts ¶ 5.) Whether or not Plaintiff made entries

of "white sauce" that were classified under HTSUS 2103.90.90, and that can serve as

"prior treatment" for the purposes of 19 U.S.C. § 1625(c)(2), represents a genuine issue

of material fact. Consequently, both Plaintiff's Motion for Summary Judgment and

Defendant's Cross-Motion for Summary Judgment are denied with respect to Count II

of Plaintiff's Complaint.

**III.    Count V–Plaintiff Claims That Customs Violated Plaintiff's Due Process Rights**

In Count V of its complaint, Plaintiff claims that "[b]y failing to conduct the

revocation or modification process in a lawful manner with notice to ICP and an

opportunity for it to comment, Customs violated ICP's rights under the Due Process

Clause of the Fifth Amendment to the Constitution." (Compl. ¶ 51.) Specifically,

Plaintiff alleges that Customs violated Plaintiff's Due Process rights by abrogating the

notice and comment requirements of both 19 U.S.C. § 1625(c) and 19 C.F.R. § 177.12.

(Compl. ¶¶ 52-53.) Plaintiff has not independently alleged that Customs violated 19

C.F.R. § 177.12, but such a violation serves as one of the two bases for Plaintiff's Due

Process claim. (See id.)

**A.    Genuine Issue of Material Fact**

Because Plaintiff has predicated its Due Process claim on alleged violations of

sections 1625(c) of the U.S. Code and 177.12 of the C.F.R., summary judgment is here

precluded by the same genuine issue of material fact that precludes summary judgment

on Count I.  That is, whether or not Plaintiff's "white sauce" as entered conformed with

the description of "white sauce" given in NYRL D86228.  That genuine issue of material

fact must be resolved in order to validate Plaintiff's claim under both 19 U.S.C. 1625(c)

and 19 C.F.R. § 177.12, before the constitutional question is even addressed.  In other

words, if Plaintiff entered "white sauce" that differed from its initial ruling letter (such

as in composition or milkfat percentage), Customs could not have violated 19 U.S.C.

§ 1625(c) or 19 C.F.R. § 177.12, which in turn means Customs could not have violated

Plaintiff's constitutional right to Due Process as Plaintiff alleges.  Accordingly, both

Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary

Judgment are denied with respect to Count V of Plaintiff's Complaint because there is a

genuine issue of material fact as to whether the "white sauce" imported by Plaintiff

conforms with NYRL D86228.

IV.     **Defendant's Contentions that Plaintiff Made a Material Misstatement or
        Omission in Obtaining NYRL D86228**

The government maintains that Plaintiff made a material misstatement or

omission in obtaining the ruling letter.  The government attempts to demonstrate a

material misstatement or omission by pointing to alleged differences between the description of "white sauce" in the ruling letter and the composition of "white sauce" as entered by Plaintiff. (<u>See</u> Def.'s MSJ 25-31, 34-38.) These allegations are detailed above. <u>See</u> <u>supra</u> 11-13. The government also attempts to show a material misstatement or omission in obtaining NYRL D86228 by arguing that Plaintiff (1) failed to disclose its knowledge as to the typical use of "white sauce" when it obtained its ruling letter, and (2) by failing to disclose commercial, common, or technical designations of the product. (<u>Id.</u> at 31-33, 38-39.)

The Court finds that, while pertinent, the evidence offered by the government as to these issues is not sufficient to entitle Defendant to judgment as a matter of law, and consequently does not alter the Court's decision to deny summary judgment to both parties. If, in fact, NYRL D86228 was obtained by Plaintiff's material misstatement or omission at the time it was issued, such issues will be addressed and resolved at trial.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied. Defendant's Cross-Motion for Summary Judgment is also denied.

                                        ___/s/ Gregory W. Carman_____
                                        Gregory W. Carman, Judge

Dated: January 29, 2009
New York, New York